UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARDEN CITY BOXING CLUB, INC., | 1:04-cv-06664-AWI-SMS |
| Plaintiff, | **FINDINGS AND RECOMMENDATION GRANTING MOTION FOR DEFAULT JUDGMENT** (Doc. 19) |
| vs. | |
| JOSE LUIZ RAZO ALVARADO and HORTENCIA ALVARADO, individually, jointly and dba ALVARADO 7 CORONA'S DEN, | |
| Defendants. | |

Plaintiff is proceeding with an action for statutory damages for a violation of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605. Pending before the Court is Plaintiff's application for default judgment against Defendants Jose Luiz Alvarado and Hortencia Alvarado, individually and doing business as Alvarado & Corona's Den. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(19).

I. Procedural History

Plaintiff filed a complaint on December 7, 2004, for statutory damages, costs, and attorney's fees pursuant to 47

1

U.S.C. §§ 553 and 605 for an unauthorized and wilful interception of a licensed interstate communication of a sporting event.

Defendant Hortensia Alvarado was personally served on January 3, 2005. A Summons was served on Jose Luiz Razo Alvarado on April 23, 2005, when the Summons and Complaint were left at his dwelling with Ray Hurtado, brother-in-law of Jose Luiz Razo Alvarado. The defendants failed to answer or otherwise respond as required. Plaintiff requested that defaults of the Defendants be entered. The Clerk entered Default as to Jose Luiz Razo Alvarado on June 15, 2005, and against Hortencia Alvarado on June 24, 2005.

On February 26, 2007, Plaintiff filed a notice of motion and motion for default judgment against the Defendants; a memorandum of points and authorities; and affidavits of Marcus W. Corwin, Cory Westbury, and attorney Martin B. Greenbaum. Proofs of service show that these documents were served by mail on Jose Luis Ruiz Alvarado at 5804 West Cromwell, Fresno, CA, 93722, and on Hortensia Alvarado at 27699 Avenue 13, Madera, CA, 93637, on February 22, 2007.

Plaintiff's application for default judgment against Defendants came on regularly for hearing on March 30, 2007 at 9:30 a.m. in Courtroom No. 7 before the Honorable Sandra M. Snyder, Chief United States Magistrate Judge. Martin B. Greenbaum, Esq., of Greenbaum Law Group, LLP, appeared telephonically on behalf of Plaintiff, and argued on Plaintiff's behalf. Defendants were personally present in the courtroom and were apprised of the status of the case. The matter was submitted for preparation of findings and recommendations.

II.  <u>Claims Presented</u>

The Complaint alleges that Plaintiff entered into a closed-circuit license agreement to exhibit the closed-circuit telecast on September 14, 2002, of the championship boxing match between Oscar De La Hoya and Fernando Vargas from the Mandalay Bay Hotel and Casino in Las Vegas including the preliminary bouts and all related bouts (collectively "the Event").  According to state law the Event was legally available to the public only through a commercial establishment such as a bar or restaurant only after the establishment entered into a contractual agreement with Plaintiff to do so.  Residential cable subscribers could view the event only by purchasing it for an additional fee through a residential pay-per-view cable system.

Commercial establishments which contracted with the Plaintiff were required to pay a sublicense fee.  Defendants, individuals doing business as Alvarado & Corona's Den, did not contract with Plaintiff to exhibit the Event.  It was alleged that on September 14, 2002, without authorization, Defendants wilfully intercepted and/or received, or assisted interception or receipt of the interstate communication of the Event; they then transmitted and published, or assisted in the transmission or publication of the communication to patrons within Defendants' premises at Alvarado & Corona's Den without authorization to do so.  Plaintiffs alleged that the Defendants thus misappropriated Plaintiff's licensed exhibition of the Event, infringed upon Plaintiff's exclusive rights which avoided proper payment, and permitted patrons of Defendants to view the Event without Defendants' or patrons' being authorized to do so.

3

In the first claim, Plaintiffs alleged that they were persons aggrieved by Defendants' conduct, which violated the Communications Act of 1934, 47 U.S.C. § 553, which prohibits the interception, receipt, or assistance of reception or receipt, of any communications service offered over a cable system unless specifically authorized to do so by a cable operator or as specifically authorized by law.

In the second claim, Plaintiffs alleged that they were persons with a proprietary right in the communication and thus were aggrieved by Defendants' conduct, which violated the Communications Act of 1934, 47 U.S.C. § 605, which prohibits the unauthorized interception and publication, or assistance therein, of any interstate radio communication for the benefit of the person intercepting and publishing the communication or for the benefit of another who is not entitled to such benefits.

Plaintiff seeks statutory damages under both 47 U.S.C. §§ 553(c)(3)(A)(ii)& (B) and 605(e)(3)(C)(i)(II) & (C)(ii), costs and attorneys fees as provided in both aforementioned sections.

III. <u>Evidence Submitted in Support of the Motion</u>

In an affidavit dated July 22, 2005, (Motion, Ex. A), Marcus W. Corwin, President of Secure Signal, Inc., for Plaintiff Garden City Boxing Club, Inc., restated the general allegations of the complaint. He stated that the Event was legally available to commercial establishments in California only through a contractor agreement with Plaintiff, pursuant to which the establishments were required to pay to Plaintiff a sublicense fee to receive the Event. The sublicense fee was based on the capacity of the establishment. The fee was based on $20 times

4

the maximum fire code occupancy of the commercial establishment purchasing the Event.  To safeguard against unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event was electronically coded or scrambled and was not available to or intended for the use of the general public.  If a commercial establishment was authorized by Plaintiff to receive the Event, the establishment was provided with the electronic decoding equipment and/or the satellite coordinates necessary to receive the signal.

On September 14, 2002, without authorization, the Defendants, Jose Luiz Razo Alvarado and Hortencia Alvarado, individually and jointly and dba Alvarado & Corona's Den intercepted and received or assisted in the interception and receipt of the transmission of the Event and broadcast or assisted in the broadcast of the Event.  On the night of the Event, and investigator employed by Plaintiff observed the Event being telecast to patrons of Defendant's commercial establishment.

In negotiating sublicenses, Plaintiff represented to commercial establishments the location of other authorized commercial establishments licensed to receive the broadcast; thus, unauthorized interception and exhibition of closed-circuit programming such as the Event resulted in an impression that Plaintiff had misrepresented the number and location of other broadcasts.  Thus, Plaintiff suffered a loss of reputation and goodwill, as well as a further indirect consequence of loss of future business from legitimate commercial establishments which would refuse to pay sublicense fees because of the difficulty or

impossibility of competing with unauthorized commercial establishments which pirated programs without having to pay a fee.  Further, Defendants' patrons purchased food and/or drinks while viewing the Event.  But for the Defendants' pirating, Defendants' patrons would have had to view the Event at an authorized commercial establishment.  Defendants' broadcast caused authorized establishments to lose patrons and thus to fail to recover the amounts of the sublicense fees paid by the authorized establishments.  Further, each of Defendants' patrons was lost as a patron of an authorized broadcast, and Defendants' customer base was eroded.

Corwin also stated that because the Event was broadcast to Defendants' patrons, Defendant's only purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial purposes by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff.  Corwin characterized Defendants as willful violators of the statute who must be held accountable for a substantial amount above the market value of the sublicense fees; otherwise, other commercial establishments would be encouraged to violate the law, knowing the full extent of its liability would not exceed what they would have to pay for a license on the open market.  Corwin stated that the award of damages must be sufficiently significant to deter Defendants and other unauthorized commercial establishments from pirating protected communications.

//

/

1         In the affidavit of Kory Westbury (Motion, Ex. B),
2  Westbury indicates that he entered the establishment on Saturday,
3  September 14, 2002 at (time illegible) and observed approximately
4  70 people in the bar.  There was one television provided for
5  viewing by the patrons.  This television was located in a
6  secondary room inside the bar to the left of the entry.  Westbury
7  states that a preliminary bout between Miguel Cotto and John
8  Brown was in progress at the Mandalay Bay Resort in Las Vegas and
9  was being displayed at Alvarado and Corona's Den while he was
10 observing.  He observed two announcers, Jim Lampley and George
11 Foreman, discussing the fight card.  There was a "promotion
12 poster" at the door indicating the De La Hoya/Vargas fight, and a
13 $5.00 per person cover charge was being collected from entering
14 customers by a female employee who was sitting at the entrance
15 door.  Westbury did not indicate how long he remained in the
16 establishment, did not state the maximum fire code capacity of
17 the establishment nor the number of vehicles in the parking lot.
18         Martin B. Greenbaum, attorney for Plaintiff, submitted
19 a Declaration in Support of Request for Attorneys Fees (Motion,
20 Ex. C).  He states the schedule of default attorney fees shows a
21 total of $5,820.00 in attorneys fees, however, no such schedule
22 was submitted with the motion or his subsequent declaration filed
23 on April 30, 2007 (Doc. 24).  He further asks for damages in the
24 sum of $110,000.00.
25    IV.  Default Judgment
26        A court has the discretion to enter a default judgment
27 against one who is not an infant, incompetent, or member of the
28 armed services where the claim is for an amount that is not

7

certain on the face of the claim and where (1) the defendant has been served with the claim; (2) the defendant's default has been entered for failure to appear; (3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and, (4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect.  Fed. R. Civ. P. 55(b); <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392 (9th Cir. 1988).  Factors that may be considered by courts in exercising discretion as to the entry of a default judgment include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the sufficiency of the allegations in the complaint to support judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472; the possibility of a dispute concerning material facts, <u>id.</u>; whether the default was due to excusable neglect, <u>id.</u>; and, the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, <u>id.</u>

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim.  <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392.  Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not

8

1 contained in the pleadings, and claims which are legally
2 insufficient, are not established by default. Cripps v. Life
3 Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992);
4 TeleVideo Systems, Inc. av. Heidenthal, 826 F.2d 915, 917 (9th
5 Cir. 1987).

### A. Status of Parties, Service, Notice, Entry of Default

Defendant Hortensia Alvarado was personally served on January 3, 2005. A Summons was served on Jose Luiz Razo Alvarado on April 23, 2005, when the Summons and Complaint were left at his dwelling with Ray Hurtado, brother-in-law of Jose Luiz Razo Alvarado. The declaration of due diligence of the process server shows attempted service on two occasions on Jose Luiz Razo Alvarado, after which the processor employed substituted service on April 23, 2005. Bonita Packing Co. v. O'Sullivan, 165 F.R.D. 610, 613 (C.D.Cal. 1995); Espindola v. Nunez, 199 Cal.App.3d 1389, 1391-92 (1988). Both parties are persons at least eighteen years of age, and thus are not infants. Neither is an incompetent or a member of the armed forces.

The Court finds that the service here satisfies Fed.R.Civ.P. § 4(e) and Cal.Civ.Proc.Code § 415.20(b), and that Defendants were both properly served with process. However, Defendants did not respond to the complaint. Further, the Court finds that they were served with the default entered by the Clerk.

Defendants were also served with Plaintiff's motion for default judgment and thus received notice of Plaintiff's application for a default judgment. In addition, the notice was adequate pursuant to Fed. R. Civ. P. 55(d) and 54(c), which

9

require that a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Plaintiff expressly alleged in the complaint that Plaintiff sought damages resulting from the interception and exhibition and that the total amount of damages sought was $60,000.00 plus costs and fees for the first claim, and $110,000.00 plus costs and fees for the second claim. Thus, Plaintiff gave adequate notice of its claim for an amount that exceeds the amount that is recommended to be awarded.

      B.   <u>Sufficiency of the Complaint</u>

"Upon default, the well pleaded allegations of the complaint relating to liability are taken as true." <u>Dundee Cement Co. v. Highway Pipe and Concrete Products</u>, 722 F.2d 1319, 1323 (7th Cir. 1983); <u>Televideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, <u>Moore's Federal Practice</u> §55.11 (3d ed. 2000).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides, in pertinent part, that judgment by default may be entered by the Court, as follows:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

//

At the hearing on the motion for default judgment on March 30, 2007, the Court questioned Plaintiff about the propriety of proceeding pursuant to both §§ 553 and 605, and after discussion, counsel was directed to advise the court whether Defendants pirated the Event by use of cable or satellite reception in order for the court to properly assess damages. In his response filed on April 30, 2007, Plaintiff stated that "this information is beyond the percipient knowledge of Plaintiff and solely within the percipient knowledge of defendants. Plaintiff knows the signal was pirated but does not know how the scheme was perpetrated. Both statutes fix statutory penalty from $10,000 up to $100,000, and Plaintiff requests the lowest of the two penalties based on the information already submitted." (Decl., 4/30/07, p.1:28 - 2:1-3).

The allegations of the complaint establish that Defendants received the program but were not authorized to do so. Further, Defendants admitted to the violation when they made an appearance on March 30, 2007. Thus, the Court finds that Defendants have violated § 553(a)(1). <u>Home Box Office v. Gee-Co Inc.</u>, 838 F.Supp. 436, 439 (E.D.Mo. 1993).

C.  <u>Damages</u>

Title 47 U.S.C. § 553 provides for actual or statutory damages; statutory damages are for all violations involved in the action and are in a sum of not less than $250 or more than $10,000 as the court considers just. 47 U.S.C. § 553(c)(3)(A)(ii). If the Court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages,

whether actual or statutory, by an amount of not more than $50,000. § 553(c)(3)(B).

Evidence as to damages must be provided even though the judgment is based on a default. See TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Under § 553, Plaintiff seeks statutory damages in the amount of $10,000 [§ 553(c)(3)(A)(ii)], and statutory damages for wilfulness in the amount of $50,000 [§ 553(c)(3)(B)].

Plaintiff contends that the Defendants only purpose and intent in exhibiting the Event was to secure private financial gain and direct commercial purposes.  Here, while the Event was broadcast in a commercial setting, there is no evidence of significant "commercial advantage or private financial gain." Plaintiff alleges that Defendants charged a cover charge to enter the establishment, but the evidence is unclear as to whether or not all of the estimated 70 patrons of the establishment paid the cover charge of $5.00.  The evidence does not reveal the size or capacity of the secondary room where the television was located, or give an estimate of how many patrons were viewing the Event in the secondary room.  There is no evidence that the Defendants charged a premium for drinks or other services.  In response to the question regarding advertising or promotion of the Event, Westbury states that a poster was at the front door indicating the De La Hoya/Vargas fight.  There is no evidence as to how large the sign was, or how long it had been in place.  The existence of such a sign, without more, is not an indication of active or blatant promotion of the Event to the surrounding community.  While Defendants clearly violated the provisions of

§ 553, because the cover charge was minimal, the advertising less than effective, and no premium charges were shown to be in effect for food and drink, Plaintiff has failed to prove a substantial wilful violation in this case.

Here, there is only one violation.  The award cannot precisely reflect the financial loss that Plaintiff suffered with reference to the fee that Plaintiff could have charged because the declarations do not provide evidence of the capacity of the establishment.  Corwin's affidavit (p. 2, ¶ 7) only refers to a fire occupancy capacity of 150 persons by way of example, and not as the actual characteristic of the Defendants' establishment.  Thus, even if the Court accepts that the formula for the fee is 20 times the capacity, there is no evidentiary basis to calculate the claimed loss.

Plaintiff seeks additional compensation to account for any profits gained by the Defendants for meals and/or drinks sold to the patrons as an indirect result of their unlawful acts.  Plaintiff has not provided the Court with the maximum allowable capacity nor is there any evidence that the Defendants charged a premium for the food and drink served.  The advertising was minimal with no evidence of any advertising at any time prior to the Event.  As a result, the Court has little or no basis for computing precisely the claimed loss.

Likewise, because of an absence of facts concerning the volume of Plaintiff's business or the effect of Defendants' acts on that volume, Plaintiff's claim for the loss of goodwill or the indirect loss of profits from Defendants' broadcast is speculative.  Cf. Kingvision Pay-per-View, Ltd. v. Backman, 102

F.Supp.2d at 1198; Entertainment by J & J, Inc. v. Perez, 2000 WL 890819 at *2 (N.D. Cal. 2000).

Because Defendants did not have authorization to intercept or exhibit the Event, their conduct was willful in the sense that it evinced a disregard for the governing statute and an indifference for its requirements.  See ON/TV v. Julien, 763 F.2d 839, 844 (7th Cir. 1985).  The Court concludes that despite the lack of aggravating circumstances surrounding the Defendants' violation, the violation itself falls squarely within the scope of the statute and is contrary to the policies underlying the Federal Communications Act.  See Home Box Office v. Gee-Co, Inc., 838 F.Supp. 436, 439 (E.D.Mo. 1993).  Justice requires the imposition of statutory damages which are not excessive, and which yet are not insubstantial.  Thus, Plaintiff should be awarded $2,500.00 in statutory damages for the violation.

    D.    <u>Attorney Fees and Costs</u>

Title 47 U.S.C. § 553(c)(2)(C) provides that the Court may direct the recovery of full costs, including awarding reasonable attorneys' fees, to a prevailing aggrieved party.

Here, Plaintiff has prevailed.  The declaration of Attorney Greenbaum requests attorney fees in the amount of $5,820.  In his Motion Greenbaum states: "Based on the amount of damages requested, the default attorneys fees per the courts schedule [1] is $5,820.00."  (Motion, p. 22:23-24)

//

---

[1] This Court is unaware of the existence of any court schedule of attorneys fees based upon the amount of damages awarded.

At the March 30, 2007, hearing, the Court informed Plaintiff's attorney that no schedule setting forth a basis for awarding attorney fees had been provided to the Court. Plaintiff's attorney was directed to provide a proper request for attorney fees in detail, setting forth the hours expended and the hourly rate charged, along with a proper claim for costs incurred on behalf of Plaintiff. This information was to be provided in further briefing to be filed on or before April 30, 2007. The Plaintiff's Declaration Re Motion for Default filed on April 30, 2007 makes no reference whatsoever to either attorneys fees or costs. Thus, despite the fact that counsel was afforded a second opportunity to provide the proper documents to support an award of discretionary attorney fees and costs, he has not done so. For these reasons, the Court, in its discretion, declines to award attorney fees and costs.

V.   Recommendation

Accordingly, it is RECOMMENDED that:

1. Plaintiff's application for default judgment against Defendants JOSE LUIZ RAZO ALVARADO and HORTENCIA ALVARADO be GRANTED;

2. Judgment against Defendants JOSE LUIZ RAZO ALVARADO and HORTENCIA ALVARADO, individually and doing business as Alvarado & Corona's Den, in the combined amount of $2,500.00 statutory damages be ENTERED, but that the motion otherwise be DENIED;

3. The request for attorney fees and costs be DENIED; and;

//

15

4. Defendants Jose Luiz Razo Alvarado and Hortensia Alvarado, who appeared at the March 30, 2007, hearing be served with a courtesy copy of these Findings and Recommendations as follows:

> Jose Luiz Razo Alvarado
> Hortensia Alvarado
> P.O. Box 601
> Biola, CA 93606

These findings and recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days from the date of service of this order, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 11, 2007**              /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE